# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

GARY P. EAST,                     )
                                  )
              Plaintiff,          )
                                  )
v.                                )      Case No. CIV-12-225-RAW-KEW
                                  )
CAROLYN W. COLVIN, Acting         )
Commissioner of Social            )
Security Administration,          )
                                  )
              Defendant.          )

## REPORT AND RECOMMENDATION

Plaintiff Gary P. East (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was born on October 31, 1957 and was 53 years old at the time of the ALJ's decision. Claimant completed his education through the eleventh grade with two years of vocational training in auto body painting and three years of carpentry in high school. Claimant has worked in the past as a cabinet maker. Claimant alleges an inability to work beginning May 15, 2009 due to

limitations resulting from back problems, bipolar disorder, and arthritis.

**Procedural History**

On March 31, 2010, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On June 23, 2011, an administrative hearing was held before ALJ Osly F. Deramus in McAlester, Oklahoma. On August 19, 2011, the ALJ issued an unfavorable decision on Claimant's application. The Appeals Council denied review of the ALJ's decision on April 24, 2012. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform a range of medium work with limitations.

**Error Alleged for Review**

Claimant asserts the ALJ committed error in (1) failing to find Claimant's disk protrusion of the thoracic spine constituted

a severe impairment; (2) finding Claimant's alcohol dependence was a severe impairment; (3) failing to fully and fairly develop the record with regard to Claimant's COPD; and (4) reaching an RFC which was not supported by substantial evidence.

**Step Two Analysis**

In his decision, the ALJ determined Claimant suffered from the severe impairments of lumbar osteoarthritis, mood disorder, and alcohol dependence. (Tr. 10). He also found Claimant retained the RFC to perform medium work except that due to psychologically based factors, Claimant could perform simple and some detailed tasks. (Tr. 13). After consultation with a vocational expert, the ALJ determined Claimant could perform the representative occupation of hand picker. (Tr. 21).

Claimant contends that the ALJ erred in not finding his disk protrusion as a severe impairment. On May 10, 2007, Claimant's MRI was evaluated by Dr. Gregory Wilson. Dr. Wilson noted a "small disc protrusion at the T7-8 level without cord compression." (Tr. 298). An examination by Dr. Richard Hastings, II revealed moderate myofasciatis with trigger point pain from T4 to T10. His range of motion of the thoracic back revealed rotation to the left and right limited to 10 degrees. (Tr. 243).

A claimant bears the burden at step two to present evidence

5

that she has a medically severe impairment or combination of impairments. <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146 & n. 5 (1987). While the showing required is described as "de minimis," the claimant "must show more than the mere presence of a condition or ailment." <u>Hinkle v. Apfel</u>, 132 F.3d 1349, 1352 (10th Cir. 1997) (quotation omitted).

The ALJ's step two task is to determine, based on the record, whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 404.1520(c). An impairment is "not severe if it does not significantly limit [a claimant's] ability to do basic work activities." 20 C.F.R. § 404.1521(a).

The ALJ recognized the findings of Drs. Wilson and Hastings but afforded their opinions "little weight." He concluded that Claimant's testimony that he could dig post holes using manual post hole diggers and the fact that Claimant has earned close to a substantial gainful activity level for finding his thoracic condition did not constitute a severe impairment. (Tr. 18). Given the fact Claimant has apparently sought no treatment for his thoracic disk protrusion since his worker's compensation case in 2007 and he engages in significant physical activity without apparent limitation from his disk protrusion, this Court cannot

6

conclude that the ALJ erred in failing to find this condition as a severe impairment.

**Alcohol Dependence as a Severe Impairment**

Claimant contends the ALJ erred in finding alcohol dependence as a severe impairment. Claimant initially appears to argue he was not alcohol dependent, citing to a single reference in the record. (Tr. 257). The ALJ referenced the report of Dr. Patricia Walz which indicated Claimant had been arrested on numerous occasions for alcohol related offenses. (Tr. 15, 255-57). Additionally, Claimant cites to no authority which indicates alcohol dependence cannot be a severe impairment, although special rules govern consideration of alcohol dependence. A review of cases on this issue reveals numerous instances where alcohol dependence was found to be a severe impairment without reversal. Moreover, Claimant fails to indicate how the inclusion of this condition as a severe impairment adversely affected the determination as to whether he was disabled. Consequently, this issue does not constitute reversible error.

**Duty to Develop the Record on Claimant's COPD**

Claimant contends the ALJ should have referred Claimant for a pulmonary function study since the record did not contain sufficient medical evidence to reach a conclusion as to whether

Claimant's diagnosed COPD represented a medically determinable impairment.  Generally, the burden to prove disability in a social security case is on the claimant, and to meet this burden, the claimant must furnish medical and other evidence of the existence of the disability.  Branam v. Barnhart, 385 F.3d 1268, 1271 (10th Cir. 2004) citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987).  A social security disability hearing is nonadversarial, however, and the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised."  Id. quoting Henrie v. United States Dep't of Health & Human Services, 13 F.3d 359, 360-61 (10th Cir. 1993).  As a result, "[a]n ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing."  Id. quoting Carter v. Chater, 73 F.3d 1019, 1022 (10th Cir. 1996).  This duty exists even when a claimant is represented by counsel.  Baca v. Dept. of Health & Human Services, 5 F.3d 476, 480 (10th Cir. 1993).  The court, however, is not required to act as a claimant's advocate.  Henrie, 13 F.3d at 361.

The duty to develop the record extends to ordering consultative examinations and testing where required.  Consultative examinations are used to "secure needed medical evidence the file does not

contain such as clinical findings, laboratory tests, a diagnosis or prognosis necessary for decision." 20 C.F.R. § 416.919a(2). Normally, a consultative examination is required if

> (1) The additional evidence needed is not contained in the records of your medical sources;
>
> (2) The evidence that may have been available from your treating or other medical sources cannot be obtained for reasons beyond your control, . . .
>
> (3) Highly technical or specialized medical evidence that we need is not available from your treating or other medical sources;
>
> (4) A conflict, inconsistency, ambiguity or insufficiency in the evidence must be resolved, and we are unable to do so by recontacting your medical source; or
>
> (5) There is an indication of a change in your condition that is likely to affect your ability to work.
>
> 20 C.F.R. § 416.909a(2)(b).

Claimant testified that he couldn't hardly breathe because of dust when he worked at a cabinet shop. (Tr. 42). He also noted that he had shortness of breath and chest pain, but stated the condition may be caused by heat. (Tr. 46). On June 8, 2011, Dr. Danny Silver authored a Medical Source Statement. Dr. Silver indicated Claimant suffered from COPD by history. (Tr. 302). He noted Claimant had significant exertional dyspnea and chest pain. He also opined that Claimant needed a COPD/pulmonary function testing and stress test. (Tr. 304). This finding had also been

9

made by a nurse practitioner who had previously examined Claimant. (Tr. 251). The ALJ rejected Claimant's subjective symptoms of COPD, finding no formal diagnosis had ever been made. He also noted Claimant continued to smoke. He concluded the condition was non-severe. (Tr. 11).

The ALJ was correct that nothing in the objective medical record indicates Claimant ever was treated for, diagnosed with, or complained of COPD or a similar pulmonary condition. Dr. Silver's comment on the need for testing appears to stem from Claimant's subjective statements rather than objective testing. This Court finds no error in the ALJ's failure to order additional testing for this condition.

**RFC Evaluation**

Claimant first asserts the ALJ did not reach an appropriate RFC with regard to his mental condition. On June 9, 2010, Claimant was evaluated by Dr. Patricia Walz. Dr. Walz diagnosed Claimant with bipolar disorder II vs. major depressive disorder, alcohol dependence in short term remission, and anti-social traits. Claimant's GAF was rated as 55-60. (Tr. 257). Dr. Walz found Claimant to have adequate social skills, clear and intelligible speech, average intellectual functioning, poor concentration on tasks, frustration intolerance and irritability at home, and

10

average speed of information. (Tr. 257).

On June 18, 2010, Dr. Christal Janssen completed a Mental RFC Assessment form on Claimant. She found Claimant to be moderately limited in the areas of the ability to carry out detailed instructions, the ability to maintain attention and concentration for extended periods, the ability to sustain an ordinary routine without special supervision, the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, the ability to accept instructions and respond appropriately to criticism from supervisors, the ability to response appropriately to changes in the work setting, and the ability to set realistic goals or make plans independently of others. (Tr. 260-61). Dr. Janssen concluded Claimant's reported problems with concentration and social withdrawal did not markedly impair his functioning. She found Claimant was capable of at least unskilled work where incidental interpersonal contact was required, complexity of tasks is learned and performed by rote with few variables and little judgment. The supervision Claimant required was simple, direct, and concrete (unskilled). (Tr. 262).

The ALJ fails to explain the basis for his finding that

11

Claimant could "maintain concentration and persistence for extended periods" when Dr. Walz indicated Claimant did poorly on tasks of concentration. This finding was also supported by Dr. Janssen's report.

More importantly, the ALJ's conclusion that Claimant could perform medium work is curious. Only the state agency physician Dr. Robert Redd in a Physical RFC Assessment on July 3, 2010 indicated Claimant could occasionally lift/carry 50 pounds and frequently lift 25 pounds. (Tr. 281). Dr. Jonathan Norcross simply reviewed Dr. Redd's assessment and agreed with it. (Tr. 291). Dr. William Wood found Claimant could lift no more than 10 pounds in February of 2007. (Tr. 220). Dr. Silver found Claimant could frequently lift/carry up to 5 pounds and occasionally lift/carry up to 20 pounds in June of 2011. (Tr. 302). While the ALJ gave Dr. Silver's opinion "little weight," he did not explain why he gave reduced weight to Dr. Silver's lift/carry restrictions - only his COPD findings. (Tr. 17). Dr. Woods restricted Claimant to 5 pounds lifting and carrying in April/May of 2007. (Tr. 299).

On remand the ALJ shall re-evaluate his RFC assessment to determine whether additional mental or physical restrictions should be included based upon the reports of the examining physicians. IN particular, the ALJ shall evaluate Claimant's ability to

concentrate and his lift/carry restrictions and order appropriate consultative examinations if the conflict in the existing record cannot be resolved without doing violence to the ALJ's statutory responsibilities.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 5th day of September, 2013.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE